UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAPRIE PRICE,

        Plaintiff,                CIVIL ACTION NO. 14-cv-13662

        v.                       DISTRICT JUDGE STEPHEN J. MURPHY, III

COMMISSIONER OF           MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Caprie Price seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 20) and Defendant's Motion for Summary Judgment (docket no. 21). Plaintiff has also filed a response to Defendant's Motion. (Docket no. 22.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

### I.    RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 20) be DENIED and Defendant's Motion for Summary Judgment (docket no. 21) be GRANTED.

## II.	PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with protective filing dates of May 2, 2012 and May 1, 2012, respectively, alleging that she has been disabled since April 27, 2012, due to a kidney condition, hypertension, diabetes, and depression. (TR 178-79, 242-51, 274.) The Social Security Administration denied Plaintiff's claims on August 27, 2012, and Plaintiff requested a *de novo* hearing. (TR 162-79, 196-97.) On June 7, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Andrew G. Sloss. (TR 38-65.) In a June 21, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 69-81.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. After some procedural abnormalities related to Plaintiff's prior counsel (*see* docket nos. 15, 16, 17, and 18; *see also* Administrative Order nos. 15-AO-033 and 15-AO-045), the parties filed the instant cross motions for summary judgment.

## III.	HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 20 at 5-11), and the ALJ (TR 74-79, 81) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. Defendant also set forth a recitation of the medical evidence and hearing testimony, but she limited it to the facts that she found to be pertinent to Plaintiff's challenges on appeal. (Docket no. 21 at 6-11.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned will incorporate the factual recitations by reference.

Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 27, 2012, and that Plaintiff suffered from the following severe impairments: bipolar disorder, diabetes mellitus, and hypertension.  (TR 71.)  The ALJ also found that Plaintiff's alleged chest pain was a non-severe impairment.  (TR 71.)  Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 72-74.)  The ALJ then found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of light work but with the following nonexertional limitations:  due to her psychological symptoms, the claimant is limited to work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public and coworkers.

(TR 74-80.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 80-81.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from April 27, 2012, through the date of the decision.  (TR 69, 81.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127

F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.    Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is

reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) "[t]he ALJ erred in finding that the opinions of Dr. Sayyid upon which he relied in establishing [P]laintiff's limitations were consistent with his RFC;" (2) "[t]he ALJ [] failed to adequately account for the problems presented by [P]laintiff's chronic kidney disease;" and (3) "[t]he ALJ failed to take into account [P]laintiff's carpal tunnel syndrome and/or diabetic neuropathy in assessing her RFC." (Docket no. 20 at 12-18.)

### 1. *The ALJ's Assessment of Dr. Sayyid's Opinion*

First, Plaintiff asserts that the ALJ's assessment of Dr. Samiullah H. Sayyid, M.D.'s opinion is erroneously inconsistent with the ALJ's assessment of Plaintiff's RFC. (Docket no. 20 at 12-13.) On January 3, 2012, Dr. Sayyid conducted a consultative physical examination of Plaintiff with regard to her alleged disability. (TR 347-53.) Upon examining Plaintiff, Dr. Sayyid diagnosed her with uncontrolled diabetes mellitus, hypertension, hypercholesterolemia, diabetic nephropathy, diabetic neuropathy, possible diabetic vasculopathy, bipolar disorder, carpal tunnel syndrome in both hands, a history of congestive heart failure and admission, and a history of pre-eclampsia and miscarriage. (TR 349.) Dr. Sayyid then completed a Neurologic and Orthopedic Supplemental Report form, in which he opined that Plaintiff could stand, but not for long; Plaintiff was limited in her ability to bend, stoop, or carry; Plaintiff could carry, push, or pull less than sixteen pounds; Plaintiff was unable to walk on her heels and toes; and Plaintiff's grip strength measured at four out of five in both hands. (TR 350-51.) Dr. Sayyid also completed a Range of Motion form in which he indicated some abnormalities with regard to Plaintiff's hips, knees, wrists, and hands. (TR 352-53.)

6

> The ALJ summarized Dr. Sayyid's physical examination report as follows:
>
> The claimant underwent a medical consultative examination on January 3, 2012, performed by Samiullah H. Sayyid, M.D. The claimant reported monitoring her blood sugar two to three times per week. She was not on any special diet and not doing any exercises. The claimant reported blurry vision and had been seen by an ophthalmologist and diagnosed with retinopathy and possible cataract. The claimant reported tingling and numbness mostly in her hands and sometimes in her feet. The claimant had been diagnosed with carpal tunnel syndrome, but did not have surgery. She was also not using braces as they were not prescribed. The claimant reported having mental problems such as bipolar disorder and had been seen by a psychiatrist in the past. The claimant reported a work history of home health direct care from age 18 until about a year prior to this evaluation. Examination revealed the claimant's vision to be 20/20 in both eyes, with glasses. There was no motor deficit noted. There was some paresthesia of the tips of her fingers. Deep tendon reflexes were reduced in her upper and lower extremities. All the claimant's joints were normal except for her knees. Pain was noted on palpation. No signs of crepitus or effusion, swelling or inflammation[] was [sic] noted. Movements were restricted. Both wrist joints were tender, with reduced movements. Peripheral pulses were reduced. Fine and gross dexterity in both upper extremities was normal. The claimant's grip strength was slightly reduced. The claimant's ambulation was normal. She demonstrated reduced strength bilaterally at 4/5. The claimant was unable to squat and unable to walk on heels and toes. The claimant's ambulation was normal (Exhibit 3F).

(TR 76.) The ALJ accorded great weight to Dr. Sayyid's opinion, finding it to be consistent with the clinical examination and the evidence of record as a whole. (TR 80.)

Plaintiff asserts that the ALJ's determination that Plaintiff has the residual functional capacity to perform a full range of light work is inconsistent with his assignment of great weight to Dr. Sayyid's opinion, because Dr. Sayyid's opinion, particularly with regard to Plaintiff's limited ability to stand and lift or carry, would not permit the performance of a full range of light work. (Docket no. 20 at 12-13.) Defendant contends that Plaintiff's argument is not persuasive because (1) Dr. Sayyid did not quantify Plaintiff's ability to stand with any specificity; (2) jobs in the light work category require "a good deal of walking or standing" *or* "sitting most of the time;" (3) the jobs identified by the VE in response to the ALJ's hypothetical question can be

7

performed by an individual who is "sitting most of the time;" and (4) Plaintiff testified to a greater lifting ability than that assessed by Dr. Sayyid. (Docket no. 21 at 15-17 (citing 20 C.F.R. § 404.1567(b)).) In response, Plaintiff argues that under the regulations, to have the ability to perform a full range of light work, one must be able to do "a good deal of walking or standing" *and* be able to "sit[] most of the time." (Docket no. 22 at 5 (citing 20 C.F.R. § 404.1567(b) ("To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.")).) Plaintiff's argument holds merit in this respect; the limitations assessed by Dr. Sayyid are, indeed, inconsistent with Plaintiff's RFC to perform a *full* range of light work.

Conversely, the other portion of Plaintiff's argument – that the ALJ committed reversible error in assigning Dr. Sayyid's opinion "great weight" without incorporating all of his opined limitations into Plaintiff's RFC – is not so meritorious. In fact, courts have taken the opposite position on this issue, especially where the ALJ's decision is otherwise supported by substantial evidence. *See, e.g., Alvarado v. Colvin,* No. 3:15cv102, 2016 WL 825654, at *5 (N.D. Ohio Mar. 3, 2016) (quoting *Lambert-Newsome v. Astrue*, No. 11-1141-CJP, 2012 WL 2922717 at *6 (S.D. Ill. July 17, 2012) ("the fact that [the ALJ] gave 'great weight' to [the examiner's] opinion does not mean that he was required to adopt it wholesale [as] [t]he issue of RFC is reserved to the Commissioner"); *see also Irvin v. Astrue,* No. EDCV 11-23 AJW, 2012 WL 870845, at *2–3 (C.D. Cal. Mar. 14, 2012) (finding that although the ALJ gave great weight to a consultative examiner's opinion, he did not err in implicitly rejecting one limitation from that opinion).

Here, the ALJ's assessment of Plaintiff's credibility clarifies the ALJ's reasons for not incorporating Dr. Sayyid's opinion that Plaintiff can stand, but "not for long," into Plaintiff's RFC. In his decision, the ALJ acknowledged Plaintiff's subjective written complaints and

hearing testimony that she was unable to stand for a long time due to numbness and pain in her legs (TR 74 (citing TR 284); TR 78 (citing TR 59)), and he found those complaints to be not entirely credible (TR 78).[1] In so finding, the ALJ reasoned that numerous medical records from Plaintiff's treating physicians revealed that she denied fatigue and weakness, and the records also revealed only some pain and numbness. (TR 79.) The ALJ also noted a lack of restrictions from Plaintiff's treating physicians. (TR 76.) With regard to the ALJ's failure to incorporate into the RFC Dr. Sayyid's opinion that Plaintiff could not lift more than sixteen pounds, as Defendant points out, Plaintiff testified to an ability to lift at least fifty pounds (*see* docket no. 21 at 17 (citing TR 47)), and the ALJ noted Plaintiff's capacity for heaving lifting in his decision (TR 77). Accordingly, the ALJ's decision to not incorporate all of the limitations assessed by Dr. Sayyid into Plaintiff's RFC, particularly those related to Plaintiff's ability to lift and stand, is supported by substantial evidence. Plaintiff's Motion should be denied in this regard.

## 2. *The ALJ's Consideration of Plaintiff's Kidney Disease*

Next, Plaintiff asserts that "[t]he ALJ [] failed to adequately account for the problems presented by [P]laintiff's chronic kidney disease." (Docket no. 20 at 14-16.) Specifically, Plaintiff asserts that the ALJ did not consider her kidney disease at step two of the sequential evaluation process. (*Id*. at 14.) At step two of the sequential evaluation process, it is the claimant's burden to demonstrate that he suffers from a severe impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and

---

[1] Notably, Plaintiff does not challenge the ALJ's assessment of her credibility.

work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). But the step-two severity analysis is simply a threshold determination. It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony*, 266 F. App'x at 457. Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, in assessing Plaintiff's impairments at step two of the sequential evaluation process, the ALJ found that Plaintiff's bipolar disorder, diabetes mellitus, and hypertension were severe impairments and that her chest pain was a non-severe impairment. (TR 71.) Plaintiff is correct; the ALJ did not mention Plaintiff's kidney disease at step two of the sequential evaluation process. Nevertheless, under *Maziarz*, the ALJ's failure to do so does not constitute reversible error in this matter because the ALJ considered Plaintiff's kidney disease in the remaining steps of the disability determination. For example, at step three of the sequential evaluation process, the ALJ determined that Plaintiff's impairments did not meet or medically equal Listing 6.00, which covers genitourinary disorders, such as diabetic nephropathy, that result in chronic kidney disease. (TR 72; 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 6.00.) Also, as Plaintiff admits, the ALJ considered Plaintiff's kidney disease in his RFC analysis:

> With regard[] to the claimant's allegations of severe and debilitating kidney stage III disease, the evidence does not support such allegations. At one visit it was offered that the claimant's kidney disease was stage III. With treatment, it was returned to kidney disease stage II. At that time, it was recommended the claimant restrict her protein intake. No other restrictions were offered. Specifically, no restrictions of daily activities were provided (Exhibits 1F-2F, & 7F).
>
> The claimant testified that her doctor had taken her off from work because of uncontrolled diabetes and her kidney disease. The claimant's treating physician records reveal that the claimant was taken off from work by her own request (Exhibit 8F). The claimant's treating physician or treating specialists at no time reported the claimant was restricted from performing daily activities or from work activity.

(TR 79.)

Plaintiff asserts that the ALJ's analysis is inadequate. (Docket no. 20 at 15.) In so asserting, Plaintiff argues that her kidney disease is a chronic and serious condition regardless of whether it is at stage two or stage three. (*Id*.) While this may be true, as both the ALJ and Defendant point out, none of Plaintiff's treating sources restricted Plaintiff from working or performing daily activities as a result of her kidney disease. (TR 79; docket no. 21 at 18.) Plaintiff does not dispute this fact; instead, she argues that the lack of restrictions or limitations imposed by her treating sources should not be dispositive in light of her testimony regarding frequent urination and her subjective complaints and a diagnosis of back pain. (Docket no. 20 at 15.) Plaintiff further argues that because the ALJ did not address her frequent urination or her back pain, additional analysis is required. (*Id*. at 16.)

Plaintiff's arguments in this regard lack merit for a number of reasons. First, a review of the ALJ's decision reveals that the ALJ did, in fact, acknowledge Plaintiff's reported need to urinate often as well as her back pain in the kidney area. (TR 74, 75, 77, 78.) Moreover, as cited above, and as further explained in his decision, the ALJ found that Plaintiff's statements and subjective complaints regarding the severity, persistence, and limiting effects of her kidney

11

disease and other impairments were not entirely credible. (TR 78-80.) Furthermore, the medical evidence to which Plaintiff cites regarding her back pain does not indicate that it is related to her kidney disease; in one such record, Plaintiff asserted that her back pain was work-related and told her doctor that she would like to go off work on sick leave. (*See* TR 381.) Accordingly, Plaintiff has not sufficiently demonstrated error in the ALJ's consideration of her kidney disease, and the Court finds none. Plaintiff's Motion should be denied with regard to this issue.

>  3. The ALJ's Consideration of Plaintiff's Carpal Tunnel Syndrome and Diabetic Neuropathy

Finally, Plaintiff argues that the ALJ did not adequately consider her carpal tunnel syndrome and diabetic neuropathy in assessing her RFC. (Docket no. 20 at 16-17.) Specifically, Plaintiff argues that the ALJ did not include either impairment in his analysis at step two of the sequential evaluation process. (*Id*. at 16.) As discussed above, however, under *Maziarz*, the ALJ's failure to do so does not constitute reversible error where the ALJ considers the impairments in the remaining steps of the disability determination. Here, Plaintiff admits that the ALJ mentioned her carpal tunnel syndrome and diabetic neuropathy in his summary of the medical record at a later step of the sequential evaluation process, but she contends that the ALJ did not properly consider those impairments in establishing Plaintiff's RFC, especially in light of the ALJ's assessment of great weight to Dr. Sayyid's opinion, as Dr. Sayyid diagnosed Plaintiff with both carpal tunnel syndrome and diabetic neuropathy. (Docket no. 20 at 16-17.)

Plaintiff's instant argument fails for reasons similar to her argument regarding the ALJ's assessment of Dr. Sayyid's opinion. For example, as discussed above, the ALJ acknowledged Plaintiff's subjective written complaints and hearing testimony regarding her diabetic neuropathy (TR 74 (citing TR 284); TR 78 (citing TR 59)), and he found the severity of those complaints to

be less than credible because Plaintiff's medical records revealed only some pain and numbness (TR 78-79). With regard to Plaintiff's carpal tunnel syndrome, the ALJ acknowledged Dr. Sayyid's diagnosis and pointed out that Plaintiff did not have surgery or wear braces for that condition because they had not been prescribed. (TR 76.) Moreover, any error committed by the ALJ in assessing Plaintiff's diagnosis of carpal tunnel syndrome would be harmless because Dr. Sayyid did not assess, and Plaintiff does not allege, any functional limitations as a result the diagnosis. Accordingly, the ALJ adequately considered Plaintiff's diabetic neuropathy and carpal tunnel syndrome; Plaintiff's argument fails in this regard.

## VI. CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 20) and GRANT Defendant's Motion for Summary Judgment (docket no. 21).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: March 24, 2016          s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: March 24, 2016          s/ Lisa C. Bartlett
                               Case Manager

14